UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
**IN ADMIRALTY**

Case No. _____

AXIS SURPLUS INSURANCE COMPANY, as       *
subrogee of Sunset Harbor Yacht Club, Inc.,   *
                                              *
    PLAINTIFF,                            *
                                              *
Versus                                        *
                                              *
RENWICK ROBERT HADDOW,                        *
ZOIA HADDOW, and WINWARD YACHTING,            *
LTD.,                                         *
                                              *
    DEFENDANTS.                           *
                                              *

## ORIGINAL COMPLAINT

COMES NOW Plaintiff, AXIS SURPLUS INSURANCE COMPANY, as subrogee of Sunset Harbor Yacht Club, Inc., who files this Complaint against Defendants, RENWICK ROBERT HADDOW, ZOIA HADDOW, and WINWARD YACHTING, LTD., and alleges:

### I. JURISDICTION AND PARTIES

1. Plaintiff AXIS SURPLUS INSURANCE COMPANY ("AXIS") is a foreign organization and underwriter of insurance policies with its statutory home office located at 111 South Wacker Drive, Suite 3500, Chicago, IL 60606.  At all times described herein, Plaintiff provided a policy of insurance to Sunset Harbor Yacht Club, Inc.

2. Sunset Harbor Yacht Club, Inc. ("Sunset Harbor") is duly incorporated in the State of Florida and is a full service marina, featuring 125 member-owned wet slips accommodating vessels from 45 to more than 150 feet in Miami Beach, Florida 33139.

3. Defendant RENWICK ROBERT HADDOW, is a citizen of the United Kingdom, with a primary residence of 527 Stanwich Rd, Greenwich, Greenwich County, Connecticut 06831.

4. Defendant ZOIA HADDOW is married to RENWICK ROBERT HADDOW, (hereinafter, "MR. AND MRS. HADDOW") with primary residence of 527 Stanwich Rd, Greenwich, Greenwich County, Connecticut 06831.

5. Defendant WINWARD YACHTING, LTD ("WINWARD") is a foreign corporation registered in Delaware.

6. This is a case of Admiralty and Maritime jurisdiction, and this Court has jurisdiction pursuant to 28 U.S.C. §1333 and Fed. R. Civ. P. 9(h) of the Federal Rules of Civil Procedure.

7. Venue is proper in this district because the events described herein took place in navigable waters of the United States, in Miami-Dade County, Florida, within this district as required by 28 U.S.C. §1391(b).

8. AXIS has investigated, adjusted and paid damages consistent with the policies of insurance issued to Sunset Harbor and consistent with AXIS's obligations under the law. As such, AXIS has express contractual and equitable subrogation rights against the Defendants to the extent of payments made.

9. AXIS stands in the shoes of its insured, Sunset Harbor, and is entitled to initiate legal action against the Defendants in this proceeding.

## II.   FACTUAL ALLEGATIONS

10. At all times material herein, Plaintiff AXIS provided a policy of insurance to Sunset Harbor.

11. On March 6, 2017, Defendants entered into a Membership Purchase Agreement ("Membership Agreement") with Sunset Harbor for Slip #D-107/108 for their vessel, M/Y Big Chief, Hull ID 7166298 a 120-foot 1991 Motor Yacht ("Big Chief").

12. As part of the Membership Agreement, which included a contribution of $1,350,000.00, MR. AND MRS. HADDOW were entitled to full use of the dock and slip; and were required to adhere to Sunset Harbor's Rules and Regulation regarding maintenance of Big Chief, including removal of the vessel from the marina in advance of any tropical storm or hurricane watch, or employ a hurricane tie-down plan approved by Sunset Harbor.

13. On March 17, 2017, MR. AND MRS. HADDOW entered into a Membership Transfer Agreement ("Transfer Agreement"), with Defendant WINWARD. The agreement transferred their membership and ownership from MR. AND MRS. HADDOW to WINWARD.

14. Despite the Transfer Agreement, MR. AND MRS. HADDOW remained identified as the designated responsible parties under the Membership Agreement.

15. MR. HADDOW is reported to be a career real estate investment fraudster, using a front called Bar Works. Bar Works had locations in Manhattan, Brooklyn, San Francisco, Las Vegas, Miami, and Istanbul.

16. MR. HADDOW reportedly raised more than $36 million from Bar Works investors to rent or buy retail spaces and turn them into offices with a bar and sublet desks. MR. HADDOW reportedly wired $16 million to foreign bank accounts.

17. On June 30, 2017, the Securities and Exchange Commission and the U.S. Attorney charged MR. HADDOW with fraud in a Bitcoin and office space investment scheme, involving Bar Works, and other similar entities ("a Ponzi scheme"). *Southern District Court of New York, Criminal Docket Case No.: 1:17-MJ-04939-UA-1*.

18. On September 11, 2017, at about 7:00 a.m., Big Chief brook loose while she was docked at Sunset Harbor in Slip #D-107-108. As a result of Big Chief becoming unmoored, she caused damages to Sunset Harbor's Dock H in the amount of One Hundred Fifty-Two Thousand, Twenty-One Dollars and 18/100 cents ($152,021.18).

19. MR. HADDOW was arrested on April 13, 2018 and presented before the United States Magistrate. MR. HADDOW potentially faces up to forty (40) years in prison. MR. HADDOW is currently in Federal Prison while a plea bargain is reached with MR. HADDOW. All assets belonging to MR. HADDOW are frozen.

20. On February 15, 2018, Sunset Harbor recorded a lien against MR. AND MRS. HADDOW and WINWARD to perfect Sunset Harbor's security interest in the collateral of MR. HADDOW's equity in the Sunset Harbor's membership.

21. A demand was sent to Defendant, WINWARD on August 2, 2018 notifying them of the allision, and damages caused as a result of the same.

22. A separate demand was sent to counsel for MR. AND MRS. HADDOW on October 25, 2018 notifying them of the allision, and damages caused as a result of the same.

### III.    COUNT I – NEGLIGENCE AGAINST MR. AND MRS. HADDOW

23. Plaintiff realleges each of the allegations in Paragraphs one (1) through twenty-two (22) above, as if set forth in full herein.

24. The Big Chief's allision with Sunset Harbor Dock H was a direct result of the negligence, unseaworthiness, and/or other fault of MR. AND MRS HADDOW, its operators, chargers, including:

    a. Failing to follow policies and procedures in making determinations as to the proper and safe berthing of the Big Chief;

    b. Failing to properly train, orientate and instruct its crewmembers and personnel;

    c. Failing to perform a necessary risk assessment;

    d. Failing to properly navigate and control the Big Chief, including failing to remove the vessel from the marina in advance of any tropical storm or hurricane watch, to avoid allision with Sunset Harbor's Dock H; and,

    e. All other such acts and/or omissions of negligence, unseaworthiness, and or other fault as may be revealed in discovery and proven.

25. As a direct result of the negligence, unseaworthiness, and/or other fault of MR AND MRS. HADDOW, Plaintiff AXIS suffered damages to the extent of payments made to its insured, Sunset Harbor.

26. Pursuant to the General Maritime Law, AXIS is entitled to indemnity from MR. AND MRS. HADDOW for all such damages, and for all other such legal and equitable relief as is just and due under admiralty and maritime jurisdiction.

### IV.     COUNT II – NEGLIGENCE AGAINST WINWARD

27. Plaintiff realleges each of the allegations in Paragraphs one (1) through twenty-two (22) above, as if set forth in full herein.

28. The Big Chief's allision with Sunset Harbor Dock H was a direct result of the negligence, unseaworthiness, and/or other fault of the WINWARD, its operators, chargers, including:

    a. Failing to follow policies and procedures in making determinations as to the proper and safe berthing of the Big Chief;

    b. Failing to properly train, orientate and instruct its crewmembers and personnel;

    c. Failing to perform a necessary risk assessment;

  d. Failing to properly navigate and control the Big Chief, including failing to remove the vessel from the marina in advance of any tropical storm or hurricane watch, to avoid allision with Sunset Harbor's Dock H; and,

29. All other such acts and/or omissions of negligence, unseaworthiness, and or other fault as may be revealed in discovery and proven.

30. As a direct result of the negligence, unseaworthiness, and/or other fault of WINWARD, Plaintiff AXIS suffered damages to the extent of payments made to its insured, Sunset Harbor.

31. Pursuant to the General Maritime Law, AXIS is entitled to indemnity from WINWARD for all such damages, and for all other such legal and equitable relief as is just and due under admiralty and maritime jurisdiction.

### V. COUNT III – BREACH OF CONTRACT AGAINST MR. AND MRS. HADDOW

32. Plaintiff realleges each of the allegations in Paragraphs one (1) through twenty-two (22) above, as if set forth in full herein.

33. On March 6, 2017, MR AND MRS. HADDOW entered into a Membership Purchase Agreement with Sunset Harbor for Slip #D-107/108 for Big Chief (attached hereto as Exhibit "A")

34. On September 11, 2017 at about 7:00 a.m., Big Chief brook loose while she was docked at Sunset Harbor in Slip #D-107-108. Subsequently, Big Chief caused damages to Sunset Harbor Dock H.

35. Pursuant to the Membership Agreement, MR. AND MRS. HADDOW owed a duty to adhere to Sunset Harbor's Rules and Regulation including:

  a. Maintenance of Big Chief, including removal of the vessel from the marina in advance of any tropical storm or hurricane watch; or,

      b. Employ a hurricane tie-down plan approved by Sunset Harbor.

36. MR. AND MRS. HADDOW breached the aforementioned duties by failing to remove Big Chief from the marina, and/or employ a hurricane tie-down plan approved by Sunset Harbor.

37. As a direct and proximate result of MR. AND MRS. HADDOW's breach of their duties, Big Chief was allowed to become unmoored and cause damages to Sunset Harbor's Dock H as outlined herein.

38. As a direct and proximate result of MR. AND MRS. HADDOW's breach of their duties Plaintiff AXIS suffered damages to the extent of payments made to its insured, Sunset Harbor.

39. Pursuant to the General Maritime Law, AXIS is entitled to indemnity from MR. AND MRS. HADDOW for all such damages, and for all other such legal and equitable relief as is just and due under admiralty and maritime jurisdiction.

## VI.   COUNT IV – BREACH OF CONTRACT AGAINST WINWARD

40. Plaintiff realleges each of the allegations in Paragraphs one (1) through twenty-two (22) above, as if set forth in full herein.

41. On March 17, 2017, WINWARD entered into the Transfer Agreement with MR. AND MRS. HADDOW (attached hereto as Exhibit "B").

42. On September 11, 2017 at about 7:00 a.m., Big Chief brook loose while she was docked at Sunset Harbor in Slip #D-107-108. Subsequently, Big Chief caused damages to Sunset Harbor Dock H.

43. Pursuant to the Membership Agreement, WINWARD owed a duty to adhere to Sunset Harbor's Rules and Regulation including:

      a. Maintenance of Big Chief, including removal of the vessel from the marina in advance of any tropical storm or hurricane watch; or,

    b. Employ a hurricane tie-down plan approved by Sunset Harbor.

44. WINWARD breached the aforementioned duties by failing to remove Big Chief from the marina, and/or employ a hurricane tie-down plan approved by Sunset Harbor.

45. As a direct and proximate result of WINWARD's breach of its duties, Big Chief was allowed to become unmoored and cause damages to Sunset Harbor's Dock H as outlined herein.

46. As a direct and proximate result of WINWARD's breach of its duties, Plaintiff AXIS suffered damages to the extent of payments made to its insured, Sunset Harbor.

47. Pursuant to the General Maritime Law, AXIS is entitled to indemnity from WINWARD for all such damages, and for all other such legal and equitable relief as is just and due under admiralty and maritime jurisdiction.

## VII. VERIFICATION OF COMPLAINT

48. An Affidavit by Plaintiff's respective authorized representative verifying the facts of this Complaint is attached as Exhibit "C".

## PRAYER

WHEREFORE, PREMISES CONSIDERED, PLAINTIFF PRAYS:

(a) That process be issued according to the rules and practice of this Court in causes of admiralty and maritime jurisdiction against the Defendants, citing them each to appear and answer all and singular matters aforesaid;

(b) That judgment be entered against the Defendants, jointly and severally, for the amount of Plaintiff's claims, with interests, costs, expenses and attorney fees;

(c) That Plaintiff has such other relief as may be justly entitled.

*[Signature block on following page.]*

Dated: August 23, 2019        Respectfully submitted,

       BUTLER WEIHMULLER KATZ CRAIG LLP

*/s/ Mary Jo Kuusela*
MARY JO KUUSELA, ESQ.
Florida Bar No.: 0652687
mkuusela@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, FL 33602
Telephone:	(813) 281-1900
Facsimile:	(813) 281-0900
*Attorney for Plaintiff, AXIS Surplus Insurance Company, a/s/o Sunset Harbor Yacht Club, Inc.*

# MEMBERSHIP PURCHASE AGREEMENT

I.  This Membership Purchase Agreement (the "Agreement") is entered into between Robert Haddow and Zoia Haddow, husband and wife, (collectively, the "Applicant") and Sunset Harbour Yacht Club, Inc. (the "Club"), effective as of the date (the "Effective Date") the Club accepts this Agreement by executing below. Applicant hereby applies for the following membership in the Club:

SPECIFICATIONS:

Slip#: D-107/108        Length: 150'    Width: 30'    Parking Space Numbers: S-744

Applicant's Membership Contribution: $1,350,000.00

Six Percent (6%) Florida Department of Environmental Protection Fee: $81,000.00 (6% of $1,350,000.00)

New Membership Fee: $67,500.00.

Total Paid by Applicant at Closing: $1,498,500.00 (inclusive of application of $135,000.00 Initial Deposit and $67,500.00 New Membership Fee Deposit).

**Total Wire Balance Due at Closing: $1,296,000.00.**

Initial Deposit received by Club on February 25, 2017: $135,000.00

New Membership Fee Deposit received by Club on February 25, 2017: $67,500.00

Applicant's Mailing Address: 527 Stanwich Rd., Greenwich, CT 06831

Applicant hereby acknowledges receipt of the Club's Articles of Incorporation, By-Laws, Membership Plan, Rules and Regulations and all exhibits or amendments thereto (the "Membership Documents"). Applicant also hereby acknowledges the receipt, review and acceptance of the latest amendments to the Club's Membership Plan attached hereto as Exhibit "A" and the Club's Electrical Policy attached hereto as Exhibit "B". Applicant hereby agrees to pay to the Club the full Membership Contribution and the New Membership Fee set forth above and any applicable taxes due thereon, and thereafter the Club membership dues, fees and charges, including any applicable taxes due thereon. The current amount of dues, fees and charges for each membership is described on a separate Schedule of Dues, Fees and Charges, included in the Membership Documents and is subject to change at the Club's sole discretion. Applicant hereby acknowledges that the Club shall remit six percent of the above Membership Contribution ($81,000.00) to the State of Florida Department of Environmental Protection, that the Club is entitled to retain five percent (5%) of the above Membership Contribution pursuant to the Membership Documents and that, upon the Club's approval of Applicant, the acceptance of the Resigning Member's resignation, and the closing of this transaction, the Club shall remit the remaining ninety five percent (95%), less any brokerage commissions, of the above Membership Contribution (but not the New Membership Fee) to the Resigning Member.

EXHIBIT A

Membership is contingent upon approval by the Board of Directors of the Club, which approval shall be at its sole discretion. Applicant agrees that the Club's Board of Directors may properly reject the application for purchase of membership for any reason, and agrees that it has no claim whatsoever against the Club or the Board of Directors for denial of the application for Membership. The Applicant has been approved by the Club's Board of Directors. A copy of the membership certificate will be issued only after Applicant has paid the Membership Contribution in full.

II.     **MEMBERSHIP DOCUMENTS**

Applicant hereby acknowledges that Applicant has until 5:00 P.M. on the day ten calendar days from the Effective Date (the "Review Period") to read and understand the Membership Documents and the Exhibits attached hereto, (all of which are incorporated into this Agreement by reference and shall constitute a binding part of this Agreement). If Applicant determines that the Membership Documents are not acceptable, Applicant may elect to cancel this Agreement by delivering written notice of such election to the Club within the Review Period. If Applicant timely cancels this Agreement within the Review Period, the Initial Deposit and the New Membership Fee set forth above shall be returned to Applicant without interest earned and thereupon the Club and Applicant shall be released of all further obligations under this Agreement. Should Applicant attempt to cancel this Agreement after the Review Period, the Initial Deposit money shall be forfeited to the Club as mutually agreed upon liquidated damages and not as a penalty, however the New Membership Fee set forth above shall be returned to Applicant without interest earned. Applicant also confirms that the closing of this transaction shall occur no later than 5 P.M., on the day fourteen (14) calendar days from the Effective Date (the "Closing Date"). If the closing has not occurred by the Closing Date due to Applicant's unwillingness or inability to close, the Club may elect to cancel this Agreement and the Initial Deposit money shall be forfeited to the Club as mutually agreed upon liquidated damages and not as a penalty, however the New Membership Fee set forth above shall be returned to Applicant without interest earned.

Should Applicant decide to become a member, the Club shall accept the New Membership Fee, the Applicant's Initial Deposit will be applied towards the Membership Contribution and the Applicant will be required to pay the balance of the Membership Contribution on the Closing Date in order to join the Club. Applicant will then be bound by the terms and conditions of the Membership Documents and the Exhibits attached hereto as the same may be amended from time to time by the Club. This Agreement (including the Membership Documents and all other Exhibits hereto) contains the entire agreement and understanding of the Applicant and the Club with respect to the subject matter hereof and supersedes all prior oral discussions and written agreements with respect thereto (including, without limitation, the Offer to Purchase Equity Membership previously executed by Applicant or any similar agreement). There are no restrictions, agreements, promises, warranties, covenants or undertakings other than those expressly set forth herein. Applicant hereby explicitly acknowledges that Applicant is not relying on any oral representations in acquiring membership in the Club. No failure or delay by the Club in exercising any right, power or privilege under this Agreement will operate as a waiver of such right, power or privilege, and no single or partial exercise of any such right, power or privilege will preclude any other or further exercise of such right, power or privilege or the exercise of any other right, power or privilege. A waiver on one occasion shall not be deemed to be a waiver of the same or any other breach, provision or requirement of this Agreement on any other occasion.

Applicant has obtained all information that Applicant believes necessary to execute this Agreement. Applicant further acknowledges that Applicant has the right to consult with an attorney in connection with the execution of this Agreement, and that Applicant has consulted with an attorney to the extent Applicant believes necessary. Applicant hereby specifically grants the Club a lien and a first priority security interest in Applicant's membership interest to secure any and all amounts owed by Applicant to the Club under the Membership Documents. In furtherance of the security interest, Applicant

hereby agrees that the Club may record a claim of lien in the public records of Dade County, Florida and/or a UCC-1 Financing Statement with the State of Florida and retain possession of the original membership certificate. Applicant hereby grants the Club a right of set off for any and all amounts owed by Applicant to the Club under the Membership Documents.

### III. PAYMENT OF DUES, FEES AND CHARGES

Applicant agrees to timely pay the current amount of dues, fees and charges as described in the Membership Documents, which are subject to change at the Club's sole discretion. In the event that any amounts owed to the Club are not paid on a timely basis, Applicant understands that Applicant may be charged a late payment charge in accordance with the Rules and Regulations or may be deemed delinquent pursuant to the Club's By-laws.

### IV. REFUND OF MEMBERSHIP CONTRIBUTION

Applicant understands and agrees that Applicant will be entitled to a refund of the membership contribution (but not the New Membership Fee) after the resignation of Applicant's membership and after said membership has been reissued by the Club in accordance with the Membership Documents. Applicant hereby confirms that the Club has the right to set a minimum purchase price for each category of membership. The membership contribution is the actual amount paid for membership, not inclusive of any taxes. Applicant acknowledges that upon resignation of the Equity Yacht Club Membership, Applicant must also resign the parking space(s) set forth above. Upon re-issuance of the membership by the Club, Applicant will receive a refund of ninety-five percent (95%), less any brokerage commissions if any, of the amount of the membership contribution (but not the New Membership Fee) then charged for Applicant's category of membership. The Club's obligation to refund Applicant's membership contribution shall be subject to set-off for all amounts then due the Club.

### V. DISPUTE RESOLUTION AND INDEMNIFICATION

If Applicant has acquired any present or prior rights or privileges in the Sunset Harbour Yacht Club facilities, Applicant hereby agrees to substitute the membership privileges acquired pursuant to the Membership Documents, as amended from time to time, and to release and discharge the Club, and its affiliates, successors or assigns and their employees, officers, directors, agents, stockholders, attorneys, members and partners from any and all claims and causes of actions that Applicant may have against any of them regarding the Sunset Harbour Yacht Club facilities. The Club has not made any representations concerning its right, title or interest in any Club facilities and Applicant has no claim against the Club concerning the Club's right, title or interest to any Club facilities. Applicant further acknowledges that any dispute in connection with this Agreement, membership privileges at the Club or related to the Membership Documents shall be subject to binding arbitration in Miami-Dade County, Florida in accordance with the Membership Documents.

The parties shall advance on an equal basis any necessary costs of the arbitration, such as reporter's fees and arbitrator's fees. The prevailing party shall be entitled to recover as part of the award all such advanced costs and reasonably attorneys' fees and related costs, fees or expenses of the arbitration. In the event of any dispute over any such fees and costs, each party may apply to the arbitrator within 30 days of the decision on the merits for a determination of an award of fees, costs and expenses. The arbitrator shall enter an award on such application within 30 days from its receipt, without a hearing, but with consideration of any factual materials or briefs submitted by the parties, and such award shall be paid within 30 days from the date of such award. Any time period set by this paragraph may be shortened or extended by the mutual agreement of the parties to the arbitration.

If any court or arbitrator shall find any provision of this Agreement to be in violation of or in contradiction to the applicable law, the parties agree such provision or provisions shall be deemed to conform to the applicable law. Should any member bring suit against the Club or others in contravention of this arbitration mandate, all costs and expenses incurred by the Club or others in the defense of such suit, including court costs, attorneys' fees and other costs including para-professional fees and travel costs through all trial and appellate proceedings, shall be recoverable as part of the arbitration award.

Judgment upon the award rendered in such arbitration shall be entered by any court having jurisdiction thereof, and the judgment shall be entered unless the award is vacated, modified or corrected as provided by law.

Applicant hereby agrees to indemnify and hold the Club and its directors, employees, officers, agents, attorneys, successors and assigns harmless from and against any and all losses, claims, damages, liabilities and expenses (the "Losses") which may be imposed on the Club or incurred by it in connection with its acceptance and remittance of all funds, inclusive of brokerage fees if any, related to the purchase, sale and transfer of the Club's membership interests hereunder or the performance of its duties hereunder, other than Losses resulting from the Club's breach of this Agreement or the Club's gross negligence or willful misconduct. Such indemnity includes, without limitation, all Losses (including counsel fees and expenses) incurred in connection with any arbitration or litigation (whether at the trial or appellate levels) arising from this Agreement or involving the subject matter hereof. The indemnification provisions contained herein are in addition to any other rights the Club may have by law or otherwise and shall survive the termination of this Agreement.

VI.   **GENERAL INFORMATION**

All information contained within this Agreement will be kept confidential by the Club, except in the ordinary course of Club operations or as required by law.

Applicant confirms the submission of the Initial Deposit in the amount of $135,000.00, and the New Membership Fee Deposit in the amount of $67,500.00, both payable to Sunset Harbour Yacht Club, Inc.

The Club may pledge or assign this Agreement. Applicant may not assign this Agreement.

This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Florida without giving effect to principles of conflicts of law, and venue and jurisdiction shall lie in Miami-Dade County, Florida.

This Agreement may be executed simultaneously in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Signatures on this Agreement by facsimile or other electronic imaging technology shall be deemed to be original signatures for all purposes.

The Club is involved in litigation filed in the 11th Judicial Circuit in and for Miami-Dade County, Florida, under: Case Number 2016-012885-CA-01, styled *Jason Gordon and Krista Gordon, as parents and natural guardians of Nolan Gordon, minor v. Sunset Harbour South Condominium Association, Inc. and Sunset Harbour Yacht Club, Inc.* The Club makes no representations concerning its rights related to the aforementioned lawsuits or any potential outcome.

(SIGNATURES APPEAR ON THE FOLLOWING PAGE)

APPLICANT:

_____
Robert Haddow

_____
Zoia Haddow

This Agreement shall not be binding on the Club until the acceptance below is signed.

ACCEPTED BY:

SUNSET HARBOUR YACHT CLUB, INC.

By: _____
Leonard Jaskol, President

Dated: 3/6/17 , the Effective Date.

*Sunset Harbour Yacht Club, Inc.*
*1928 Sunset Harbour Drive*
*Miami Beach, Florida 33139*
*(305) 398-6800*

# EXHIBIT A

## AMENDMENTS TO MEMBERSHIP PLAN

<u>VESSEL LENGTH</u>

The Membership Plan and Rules and Regulations are amended to add the following provision:

In slips where a vessel is moored parallel to the main dock, the vessel's overall length may not exceed 90% of the slip's specified length or be a minimum of 8' less than slip's specified length, whichever is greater. In all other slips the overall length of the vessel may not exceed 10% more than the slip's specified length.

All terms and agreements in the Membership Plan shall remain in full force and effect, except as specifically provided herein.

**EXHIBIT B**

**Sunset Harbour Yacht Club Electrical Policy, August, 2008**

Electricity consumed on the docks for vessels shall be a pass-through to the Sunset Harbour Yacht Club (SHYC).

To accomplish this, owners and customers residing in slips for more than thirty (30) days will be charged for electricity based on electricity consumed; read at the meter at the end of each month.

The following apply:

- When an owner or a lessee leaves its slip for a period of time, it shall be the owner/lessee' responsibility to call for its meter to be read and recorded by marina staff. When an owner/lessee returns, the meter will be read again. It is the responsibility of the owner/lessee to see that the meter is read and recorded.
- All other users of the marina will be charged a base daily rate based on the length of their vessel and the cord configuration that they use to power their vessel (30 amp, 50 amp, 100 amp, etc).
- The rates for electricity for owners and long-term lessees shall be based on the rate SHYC pays for electricity plus a multiplier sufficient to allow SHYC to recover the demand penalty that is assessed against the overall bill.
- This calculation shall be reviewed twice a year on, or about, January 1st and on, or about, June 30th.
- The rates and charges for daily users will also be recalculated during the same period and applied to all transient rentals.
- It is the responsibility of SHYC staff to monitor transient slip rentals and apply the proper charge to each customer who uses the marina.

This policy will require that, on a monthly basis, approximately the last day of the month, all meters must be read and recorded including the master meter in the electrical switch room. The electricity assessed to dock lighting and office consumption, etc. will be calculated again on January 1st and June 30th and deducted from the master reading.

Dock usage must make up the balance of the master meter reading. If not, rates must be adjusted until SHYC establishes a working policy or program that accounts for all electricity consumed by vessels at the docks both long-term and transient.

# MEMBERSHIP TRANSFER AGREEMENT

This Membership Transfer Agreement (the "Agreement") is entered into between Robert Haddow and Zoia Haddow (collectively the "Haddows"), Windward Yachting II, LLC (the "LLC") and Sunset Harbour Yacht Club, Inc. (the "Club"), (each a "Party" and collectively the "Parties"), effective as of March 17, 2017.

1. The Sunset Harbour Yacht Club Membership Plan states the following:

"For the convenience of members, a membership may be held in the name of a corporation, partnership, trust or other form of multiple ownership (collectively, the "entity"). The entity must designate one individual or family who will have the right to use the membership. The entity may change the designated user prior to the start of each membership year in accordance with the rules and regulations of the Club and upon payment of the redesignation fee established by the Club. The designated user must submit such forms as required by the Club and will be subject to the approval of the Club. The designated user must be a bona fide director, officer, partner, shareholder or employee of the entity, or a beneficiary, trustee or settlor of the entity if the membership is held in the name of a trust, and must pay the required dues and charges. No person other than the designated user and his or her immediate family will be entitled to simultaneously use the membership. The Club may establish from time to time the rules governing the designated user of a membership, including a limit on the number of times the designated user may be changed."

2. The Haddows are currently the owner of an equity membership interest (the "Membership") in the Club as evidenced by their execution of a Membership Purchase Agreement with the Club dated March 6, 2017. Robert Haddow is the sole manager and member of the LLC. In said capacities, the Haddows have requested a transfer of the Membership from the Haddows to the LLC and that the Club issue an Equity Yacht Club Membership Certificate evidencing the LLC's ownership. The LLC hereby warrants and represents that it is designating Robert Haddow as the "designated user" pursuant to the foregoing provision in the Sunset Harbour Yacht Club Membership Plan.

3. The Haddows and the LLC, jointly and severally, hereby agree to indemnify and hold the Club and its directors, employees, officers, agents, attorneys, successors and assigns harmless from and against any and all losses, claims, damages, liabilities and expenses (the "Losses") which may be imposed on the Club or incurred by it in connection with the transfer of the Club's membership interests hereunder or the performance of its duties hereunder. Such indemnity includes, without limitation, all Losses (including counsel fees and expenses) incurred in connection with any arbitration or litigation (whether at the trial or appellate levels) arising from this Agreement or involving the subject matter hereof. The indemnification provisions contained herein are in addition to any other rights the Club may have by law or otherwise and shall survive the termination of this Agreement.

4. <u>Miscellaneous</u>.

  A. <u>Fees and Expenses.</u> Except as otherwise expressly provided in this Agreement, each Party will pay its own costs and expenses incurred in connection with the negotiation, preparation and performance of this Agreement including, without limitation, the fees and

**EXHIBIT B**

expenses of its counsel, accountants and financial advisors whether or not the Agreement is consummated.

B.   Entire Agreement. This Agreement contains the entire agreement and understanding of the Parties with respect to the subject matter hereof and supersedes all prior oral discussions and written agreements with respect thereto (including any term sheet, letter of intent or similar agreement or document relating to the Agreement). There are no restrictions, agreements, promises, warranties, covenants or undertakings other than those expressly set forth herein.

C.   Amendment and Waiver. This Agreement may be modified, supplemented or amended only by a written instrument duly executed by each of the Parties hereto. Any term or condition of this Agreement may be waived at any time by the Party entitled to the benefit thereof. Any such waiver must be in writing and must be duly executed by such Party. All rights and remedies of the Parties to this Agreement are cumulative and not alternative. No failure or delay by any Party in exercising any right, power or privilege under this Agreement will operate as a waiver of such right, power or privilege, and no single or partial exercise of any such right, power or privilege will preclude any other or further exercise of such right, power or privilege or the exercise of any other right, power or privilege. A waiver on one occasion shall not be deemed to be a waiver of the same or any other breach, provision or requirement on any other occasion.

D.   Counterparts; Facsimile Signatures. This Agreement may be executed simultaneously in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Signatures on this Agreement by facsimile or other electronic imaging technology shall be deemed to be original signatures for all purposes.

E.   Governing Law; Construction. This Agreement shall be governed by and interpreted, construed and enforced in accordance with the Laws of the State of Florida applicable to a contract executed and performed in such state, excluding any conflicts of law, rule or principle that would refer the governance, interpretation, construction or enforcement of this Agreement to the Laws of another jurisdiction, and such application of Florida law shall not be vitiated by any allegations of fraud.

F.   Arbitration; Venue. The Parties agree that any dispute in connection with this Agreement shall be subject to binding arbitration in Dade County, Florida in accordance with the Club's Membership Documents. The Parties shall advance on an equal basis any necessary costs of the arbitration, such as reporter's fees and arbitrator's fees. The prevailing Party shall be entitled to recover as part of the award all such advanced costs and reasonably attorneys' fees and related costs, fees or expenses of the arbitration.  In the event of any dispute over any such fees and costs, each Party may apply to the arbitrator within 30 days of the decision on the merits for a determination of an award of fees, costs and expenses.  The arbitrator shall enter an award on such application within 30 days from its receipt, without a hearing, but with consideration of any factual materials or briefs submitted by the parties, and such award shall be paid within 30 days from the date of such award.  Any time period set by this paragraph may be shortened or extended by the mutual agreement of the Parties to the arbitration. If any court or arbitrator shall find any provision of this Agreement to be in violation of or in contradiction to the applicable law, the Parties agree such provision or provisions shall be deemed to conform to the applicable law.  Should the Haddows or the LLC bring suit against the Club or others in contravention of

this arbitration mandate, all costs and expenses incurred by the Club or others in the defense of such suit, including court costs, attorneys' fees and other costs including para-professional fees and travel costs through all trial and appellate proceedings, shall be recoverable as part of the arbitration award. Judgment upon the award rendered in such arbitration shall be entered by any court having jurisdiction thereof, and the judgment shall be entered unless the award is vacated, modified or corrected as provided by law.

G. **Binding Effect; No Assignment; No Third Party Beneficiaries.** This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns, including successors by merger or otherwise. Neither this Agreement nor any right hereunder or part hereof may be assigned by any Party hereto without the prior written consent of the other Parties hereto. The terms and provisions of this Agreement are intended solely for the benefit of the Parties and their respective successors or permitted assigns, and it is not the intention of the Parties to confer third-party beneficiary rights upon any other person or entity.

Dated: March 17, 2017

_____
Robert Haddow

_____
Zoia Haddow

**Windward Yachting II, LLC**

By: _____
Robert Haddow, Manager

This Agreement shall not be binding on the Club until the acceptance below is signed.

ACCEPTED BY:

SUNSET HARBOUR YACHT CLUB, INC.

By: _____
Len Jaskol, President

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Case No. _____

AXIS SURPLUS INSURANCE COMPANY, as    \*
subrogee of Sunset Harbor Yacht Club, Inc., and    \*
SUNSET HARBOR YACHT CLUB, INC.,    \*
                                                                                                                   \*
                        PLAINTIFFS,    \*
Versus    \*
                                                                                                                   \*
RENWICK ROBERT HADDOW,    \*
ZOIA HADDOW, and WINWARD YACHTING,    \*
LTD.,    \*
                        DEFENDANTS.    \*
                                                                                                                    \*

**VERIFICATION OF COMPLAINT**

STATE OF GA                 }
                            } SS:
COUNTY OF Fulton       }

BEFORE ME, the undersigned authority, personally known to me appeared Vicki Brooks _____ who after first being duly sworn on oath deposes and says, that s/he is the AVP _____ of AXIS SURPLUS INSURANCE COMPANY, as subrogee of Sunset Harbor Yacht Club, Inc., and that s/he has read the foregoing Complaint Under Rule 9(h) and knows the content thereof, and that the same is true to the best of her/his knowledge, information and belief. That the source of Affiant's information and the grounds for his/her beliefs are based on facts within her/his personal knowledge and/or documents that s/he has reviewed, with those documents being standard in the industry.

That Affiant has been authorized to so act. FURTHER AFFIANT SAYETH NAUGHT.

                                                                      _/s/ Vicki Brooks_
                                                              AXIS SURPLUS INSURANCE
                                                              COMPANY, as subrogee of Sunset Harbor
                                                              Yacht Club, Inc.

SWORN TO AND SUBSCRIBED before me this 21 day of May, 2019.

_/s/ Sharon Y. Coleman_
Notary Public
State of: Georgia
My Commission Expires: Feb. 23, 2020

**EXHIBIT C**